DISSENT GRIFFIN, Circuit Judge, dissenting. I respectfully dissent from the denial of the petition for rehearing en banc. Two years ago, the Supreme Court emphatically rejected our Yard-Man[1] approach to resolving whether collective bargaining agreements vest retirees with a right in a lifetime of healthcare benefits. See M & G Polymers USA, LLC v. Tackett, — U.S. -, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015). Instead of “placing a thumb on the scale in favor of vested retiree benefits” under Yard-Man, the Supreme Court instructed that courts are to interpret CBAs “according to ordinary principles of contract law.” See id. at 930, 933, 935. Our post-Tackett case law is a mess, largely due to different panels’ interpretations of two such “ordinary principles” identified in Tackett: “courts should not construe ambiguous writings to create lifetime promises” and “ ‘contractual obligations will cease, in the ordinary course, upon termination of the collective bargaining agreement.’ ... [Wjhen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life.” Id. at 936-37 (citation omitted). Five different panels (comprised of eleven total judges on our court in various combinations) have considered Tackett in published matters. First, upon Tackett’s remand from the Supreme Court, we expounded upon what constitutes “ordinary principles,” and even incorporated additional principles suggested by Justice Ginsburg in her Tackett concurrence. Tackett v. M & G Polymers USA, Inc., 811 F.3d 204, 208-09 (6th Cir. 2016) (“Tackett III”) (citing Tackett, 135 S.Ct. at 937-38 (Ginsburg, J., concurring)). Leveraging these (especially latter) elucidations, we opined that courts “cannot presume that the absence of such specific [durational] language [referring to retiree benefits themselves], by itself, evidences an intent not to vest benefits or that a general dura-tional clause says everything about the intent to vest.” Id. at 209. But despite these overarching pronouncements, we did not substantively address the CBA at issue; we remanded the matter to the district court for consideration in the first instance. Id. at 206. We have applied these “ordinary principles” from Tackett and Tackett III in four published cases. See Reese v. CNH Indus. N.V., 854 F.3d 877 (6th Cir. 2017); UAW v. Kelsey-Hayes, 854 F.3d 862 (6th Cir. 2017); Cole v. Meritor, Inc., 855 F.3d 695 (6th Cir. 2017); and Gallo v. Moen, Inc., 813 F.3d 265 (6th Cir. 2016). In my view, these decisions are in irreconcilable conflict regarding how courts are to view du-rational clauses. Indeed, each produced separate and spirited writings on that issue—a dissent in Reese by Judge Sutton, a dissent in Kelsey-Hayes by Judge Gilman, a “reluctant” concurrence in Cole by Judge White, and a dissent in Gallo by Judge Stranch. We issued Gallo a few weeks after Tack-ett III. “First and foremost,” we noted, nothing in the CBA there committed the employer to provide healthcare benefits for life. 813 F.3d at 269. Relatedly, and in no uncertain terms, we highlighted the juxtaposition of this lack of a commitment with the CBA’s express durational limitation: a CBA’s general durational clause “supplie[s] a concrete date of expiration,” and “[w]hen a specific provision of the CBA does not include an end date, we refer to the general durational clause to determine that provision’s termination.” Id. That is to say, commitments to provide retirees healthcare in the form of “will be provided,” “will be covered,” and “continued” healthcare—without specific dura-tional language—“guarantee benefits until the agreement expires, nothing more.” Id.-, see also id. at 271-72. For these and other reasons, we held—over Judge Stranch’s dissent—the employees’ benefits were not vested. 18 U.S.C. § 2255. Enter our trio of cases issued on April 20 of this year: Cole, Kelsey-Hayes, and Reese. Issued first, Cole found Gallo to be “legally indistinguishable”—the CBA “provided that retiree healthcare benefits ‘shall be continued,’ ” it did not “provide[ ] a specific expiration date for those benefits,” and “explicitly tied healthcare benefits to the continuing existence of the CBA in question.” 855 F.3d at 700. Given this, and the CBA’s general durational clause, we found the CBA to be “unambiguous in not vesting retiree healthcare benefits for life.” Id. Judge White “reluctantly concurred],” writing that she disagreed with Gallo but was bound by its holding. Id. at 702 (White, J., concurring). We denied the ap-pellees’ petition for rehearing en banc on June 23,2017. Kelsey-Hayes and Reese fell the other way. In the latter, and over Judge Sutton’s dissent, we distinguished Gallo “because the parties in this case carved out certain benefits, such as life insurance and healthcare insurance, and stated that those coverages ceased at a time different than other provisions of the CBA. True, this provision says only that healthcare coverage continues past the date of retirement and is silent on whether the benefits continue past the termination date of the agreement. But, when read in conjunction with the whole instrument, as Tackett III commands, this silence, rather than resolving ambiguity, furthers it. We cannot, and should not, presume that the general-dura-tional clause here says everything about the parties’ intentions.” Reese, 854 F.3d at 882. We then went on to find ambiguity on the basis of the CBA’s tying of benefits to achievement of pensioner status, id. at 882-83, and concluded Tackett III mandated that we not “rely[ ] exclusively on the general-durational clause to resolve this matter.” Id. at 883. Importantly, we highlighted significant tension between Tackett III and Gallo: To the extent that Tackett III and Gallo are in conflict—a dispute about which reasonable minds may differ—Tackett III, being first in time, must govern. To so hold is not an endorsement of Tackett III ⅛ reasoning nor is it an indictment of Gallo’s; rather, it simply demonstrates adherence to this court’s precedent. Id. at 883 n.2. We denied both parties’ petitions for rehearing en banc on August 28, 2017. In the former, and over Judge Gilman’s dissent, we distinguished Gallo because, unlike there, the CBA at issue in Kelsey-Hayes “barred unilateral modification.” 854 F.3d at 868, 871-72. This distinguishing factor, along with the CBA’s “use of three different types of durational language for specific provisions within the agreement”—but none with respect to healthcare benefits—led us to conclude the CBA was “ambiguous as to the duration of healthcare benefits” and therefore permitted the use of extrinsic, evidence to find an intent to vest benefits. Id. at 872; see also id. at 868-69. In my view, we should grant rehearing en banc in Kelsey-Hayes in order to secure the uniformity of our decisions post-Tack-ett. Fed. R. App. P. 35(a)(1). As set forth above and in Judge Gilman’s panel dissent, our published decisions conflict regarding the weight we give the plain language of a collective bargaining agreement’s durational limitations. Kelsey-Hayes, 854 F.3d at 873-77 (Gilman, J., dissenting). Simply put, Gallo, Cole, Reese, and Kelsey-Hayes cannot all be correct. We should also take this opportunity to decide the precedential value (if any) of Tackett III—there is reasonable debate as to whether its entire discussion is dicta, id. at 873-74, whether it conflicts with Gallo, Reese, 854 F.3d at 883 n.2, and whether it is inconsistent with Tackett in and of itself as Justice Ginsburg’s concurring ruminations adopted by the Tackett III court were not expressly adopted by the Tackett majority. Additionally, we should grant rehearing en banc because the issue of retiree healthcare guarantees presents a question of exceptional importance. Fed. R. App. P. 35(a)(2). It is no secret that a combination of several factors—including the number of unionized workforces (and retirees) within our Circuit, the various economic downturns in several of the manufacturing sectors that led to corporate restructuring and the cutting of benefits, and our pro-retiree Yard-Man inference—has led to the maintenance of numerous retiree healthcare cases within our jurisdiction. There are at least four active cases currently on appeal to our court, see IUE-CWA v. GE, No. 17-3885; Zino v. Whirlpool, No. 17-3851/3860; Fletcher v. Honeywell, No. 17-3277; and Watkins v. Honeywell Int’l, Inc., No. 17-3032, not to mention countless others percolating in various district courts. District judges, litigants, and subsequent panels need authoritative and non-conflicting guidance, and results should not depend upon the composition of the three-judge panel. Finally, that we may not secure a majority rationale for how to approach retiree health benefits post-Tacfcett should have no bearing on whether to consider this matter en banc. Right now, our case law is one of contradiction and confusion in an area of the law that demands consistency and clarity. Were we to rehear Kelsey-Hayes en banc, the worst we could do is to maintain this disparate status quo. We should at least try, especially because this is a problem unique to us. No other circuit utilized the Yard-Man presumption, and as a result, no other circuit has struggled with applying Tackett. Thus, I fear our passing on this petition for rehearing en banc will be the last word in this matter for a long time, and our decisions will remain in conflict. For these reasons, I would grant rehearing en banc and therefore respectfully dissent. . UAW v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983).